UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                          :
                                :
THE FINISH MAN, LLC,            :   CHAPTER 11
                                :
              Debtor            :   BKRTCY. NO. 23-12767 pmm
                                :

### PLAN OF REORGANIZATION OF DEBTOR THE FINISH MAN, LLC DATED SEPTEMBER 29, 2023

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code") under Sections 1190 and 1191 is proposed by the Debtor from ongoing operations of the Debtor.

**ALL CREDITORS, PARTIES-IN-INTEREST AND EQUITY SECURITY HOLDERS SHOULD REFER TO ARTICLES III THROUGH V OF THIS PLAN FOR INFORMATION REGARDING THE TREATMENT OF THEIR CLAIMS OR INTERESTS. YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE AS BANKRUPTCY IS A SOMEWHAT UNIQUE AND ESOTERIC AREA OF THE LAW.) THIS PLAN IS A PROPOSAL BY THE DEBTOR AND SUBJECT TO COURT APPROVAL AFTER OPPORTUNITY FOR OBJECTIONS AND A HEARING. YOU ALSO HAVE THE RIGHT TO FILE AN OBJECTION TO CONFIRMATION OF THE PLAN. YOU WILL BE PROVIDED AN ORDER FROM THE BANKRUPTCY COURT SETTING IMPORTANT DATES AND DEADLINES RELATIVE TO APPROVAL OF THIS PLAN.**

### ARTICLE II
### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

A.   **The Debtor and its business**

Prior to filing, Debtor operated a general construction company in the Lehigh and Northampton County areas, typically employing several workers and/or using subcontracted work to complete construction projects. Debtor and its principal, Chris Czonstka has been in business for over thirty (30) years. Debtor's gross sales had typically been around $250,000 or higher and spiked due to an attempt to expand the business. Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                          :
                                :
    THE FINISH MAN, LLC,        :    CHAPTER 11
                                :
            Debtor              :    BKRTCY. NO. 23-12767 pmm
                                :

## PLAN OF REORGANIZATION OF DEBTOR THE FINISH MAN, LLC DATED SEPTEMBER 22, 2023

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code") under Sections 1190 and 1191 is proposed by the Debtor from ongoing operations of the Debtor.

**ALL CREDITORS, PARTIES-IN-INTEREST AND EQUITY SECURITY HOLDERS SHOULD REFER TO ARTICLES III THROUGH V OF THIS PLAN FOR INFORMATION REGARDING THE TREATMENT OF THEIR CLAIMS OR INTERESTS. YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE AS BANKRUPTCY IS A SOMEWHAT UNIQUE AND ESOTERIC AREA OF THE LAW.) THIS PLAN IS A PROPOSAL BY THE DEBTOR AND SUBJECT TO COURT APPROVAL AFTER OPPORTUNITY FOR OBJECTIONS AND A HEARING. YOU ALSO HAVE THE RIGHT TO FILE AN OBJECTION TO CONFIRMATION OF THE PLAN. YOU WILL BE PROVIDED AN ORDER FROM THE BANKRUPTCY COURT SETTING IMPORTANT DATES AND DEADLINES RELATIVE TO APPROVAL OF THIS PLAN.**

### ARTICLE II
### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

A.  **The Debtor and its business**

Prior to filing, Debtor operated a general construction company in the Lehigh and Northampton County areas, typically employing several workers and/or using subcontracted work to complete construction projects. Debtor and its principal, Chris Czonstka has been in business for over thirty (30) years. Debtor's gross sales had typically been around $250,000 or higher and spiked due to an attempt to expand the business. Debtor

-1-

suffered some slowdown during the Covid pandemic, but was pretty much able to maintain a core business. Debtor did suffer from growing too quickly and over-extending his business and business credit.

**B.   Legal Structure and Ownership of the Debtor**

The Debtor is a Limited Liability Company formed in Pennsylvania. Christopher Czonstka is the sole owner and sole member and managing member of the company.

**C.   Events Leading to the Debtor's Filing of this Chapter 11 case**

While there was some slowdown due to Covid in Debtor's business, the real blow came via too rapid expansion and a large project which consumed all of Debtor's resources, requiring Debtor to reject other work. For this small business, this set off a series of events and personal setbacks for Debtor's principal that caused multiple defaults in credit that was used to fund the purchase of materials and supplies. These creditors were not forgiving and have pressed for payment which Debtor cannot afford.

Debtor's ability to downsize and continue to operate will be key to the success of the business. He had multiple employees at one point but is now just working all the jobs with just himself and one full-time employee, his son. During this rebuilding process, Mr. Czonstka does not always take a paycheck.

**D.   Summary of Debtor's Historical Condition as of the Date of Filing.**

    1.   **Asset summary:**

        a.   All personal property on attached Exhibit "A" consisting of two trucks, a backhoe and miscellaneous hand and power tools and equipment related to construction, and a fair amount of materials and supplies.

            This value presented is $30,000, however this does not 'net' out the lienholder claim of Valley Bank, but otherwise based on a professional appraisal of the current fair market value of items on Exhibit "A". The lienholder claim is accounted for in the Liquidation Analysis, Exhibit "B".

        b.   Cash at filing: $0

-2-

    c.    Deposits: $7,082

    d.    Misc. supplies, wood, materials, etc.: $2,000

**2. Liability summary:**

    a.    Secured Debt: $13,581 (liens on vehicles)

    b.    Priority Debt: $0.00

    c.    General Unsecured Debt:   $200,000

**3. Revenue History (gross revenue)**

```
2019:     165,181
2020:     131,816
2021:     158,319
2022:     258,698
```

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Debtor has classified all claims and interests in accordance with §§ 1122, 1123 and 1190 of the Bankruptcy Code. This Article describes the creditors and how these claim are to be classified and paid. While Debtor reserves the right to dispute or object to a claim, none have yet to be identified. The classification of claims and proposed treatment within each class is as follows:

**A. Administrative Priority:**

All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code who are treated as such in this Plan shall not be obligated to file an application with the Court to approve their administrative claim priority status. Those claimants include the Subchapter V Trustee and Debtor's counsel, Kevin K. Kercher, Esquire. Other parties who wish to claim administrative expense priority shall file an application to approve their respective asserted priority status no later than thirty (30) days after the Effective Date. Administrative Priority Claims will be paid in full. These claims are estimated to total approximately $15,000.

**B. Class 1:**

Class 1 claimants are holders of allowed secured claims. These claimants total $14,000. The claims are secured by liens on

Debtor's vehicles.  These claims have been paid directly and will continue to be paid directly.

**C.     Class 2:**

General Unsecured Claims without priority.  These claims are estimated to total approximately $240,000.

**D.     Disputed Claims:**

    1.     A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order of the Bankruptcy Court and, either:

        a.     is a Proof of Claim that has been filed or deemed filed, and to which the Debtor or another party in interest has filed an objection, and/or has indicated on Appendix A that the Proof of Claim is disputed; or

        b.     no Proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

    2.     No distribution will be made on a disputed claim unless the claim is allowed by a final, non-appealable order.

    3.     Settlement of Disputed Claims: The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and in accordance with Bankruptcy Rule 9019.  Except as otherwise provided in this plan, the payments, distributions and other treatments provided in respect of each Allowed Claim or Interest in this Article shall be in complete satisfaction, discharge and release of such Allowed Claim.  Notwithstanding any other provision of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any claim and Interest which at such date or time is disputed, unliquidated, or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or Allowed Interest, whereupon such payment and distribution shall be made promptly.

## ARTICLE IV
## TREATMENT OF CLAIMS AND PAYMENT UNDER THE PLAN

**A. Treatment and payment of claims:**

**Unless otherwise provided in this Plan, funds received by the Trustee or disbursed directly by the Debtor to general unsecured creditors, but not those payments made directly to secured claims, if any, shall be used to pay the following claims in the priority indicated:**

1. Pursuant to § 1191 (e) of the Bankruptcy Code, the payment of claims entitled to priority under §§ 507(a)(2) and (a)(3) of the Bankruptcy Code shall be paid in full prior to the payment of all other claims.

2. Except as otherwise provided in § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code.

3. Concurrently with the payments made under this Plan, Debtor shall continue to pay its secured claimants pursuant to the financing agreements in place prior to filing, and has continued such payments since filing.

4. After payment of the foregoing claims, sums received by the Trustee or disbursed directly by the Debtor shall be paid, on a pro-rated basis, to allowed general, unsecured claims.

5. In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor shall retain the Debtor's interest in property of the estate.

**B. Amount and timing of payments:** Debtor proposes to pay its disposable income to creditors as above on a pro-rated basis to Class 2 creditors. Based on its projections, Debtor proposes to pay $1,000 per month to such creditors over a forty (40) month period of time. Payments are to be made quarterly, with the first set of payments to commence on the 30th day following full payment of any remaining administrative claims, and every quarter thereafter until completed. Payments are to be made by Debtor as disbursing agent, with Court approval if necessary. The payments may be set up through a 'bill pay' system.

## ARTICLE V
## TRUSTEE COMPENSATION

The Trustee shall be paid for services rendered in this Chapter 11 case an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan. If and as required, all fees and expenses requested by the Trustee are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE VI
## ATTORNEY COMPENSATION

The Debtor's attorney, Kevin K. Kercher, Esquire, shall be paid for the services rendered to the Debtor as an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan. If and as required, all fees and expenses requested by the Debtor's attorney are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE VII
## LIQUIDATION ANALYSIS

Attached hereto as Exhibit "B" is a liquidation analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of this Court. Debtor posits that it is paying much more than the liquidation value of its assets.

## ARTICLE VIII
## DEBTOR'S DISPOSABLE INCOME AND PLAN FUNDING

Attached hereto and incorporated herein as Exhibit "C"** is Debtor's best guesstimate as to: (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the anticipated sources of such income and the necessity of relevant expenses to be used to generate such income, and (iii) a summary of payments to be made under this Plan.
**This Exhibit to be provided shortly.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

None. The Debtor's personal property including its trucks and materials are stored on property owned by Debtor and his spouse, and no lease or other agreement exists between the Debtor and the individuals for the payment of any rent.

## ARTICLE X

## PROPERTY VESTS IN DEBTOR FREE AND CLEAR

Except as provided in this Plan or the Order confirming the plan, all of the property of the estate, pursuant to §§ 1141 (b) and C of the Bankruptcy Code, vests in the Debtor as of the Effective Date, free and clear of any claim or interest of any creditor provided for in this Plan.

## ARTICLE XI
## CONFIRMED PLAN BINDING ON DEBTOR AND CREDITORS

Except as provided in §§ 1141 or 1192 of the Bankruptcy code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

## ARTICLE XII
## DISCHARGE

Upon payment by the Debtor of the sums required under this Plan and application to the Court, the Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code.

## ARTICLE XIII
## GENERAL PROVISIONS

**A.   Definitions and Rules of Construction.**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

**B.   Effective Date of Plan.**

The Effective Date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

**C.   Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of

-7-

this Plan.

**D.   Binding Effect.**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**E.   Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**F.   Controlling Effect.**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**G.   Exhibits.**

The Exhibits attached to this Plan are incorporated into the Plan as if the same were fully set forth herein.

## ARTICLE XIV
## GOOD FAITH/FEASIBILITY

The Debtor believes and represents that the Plan is proposed in good faith and that Debtor has and will have the financial ability to perform under its provisions.

## ARTICLE XV
## DEFAULT

The Debtor believes it will be able to make all plan payments. However, in the event of a default in payment, any aggrieved party may sue in State Court for the balance of plan payments owed. In the alternative, the aggrieved party may request that the case be converted to a case under Chapter 7 and if closed may request that the case be re-opened to consider such conversion.

## ARTICLE XVI
## BANKRUPTCY CLAIMS/CAUSES OF ACTION

Debtor does not believe that any causes of action against

any third parties exist either under State law or the Bankruptcy Code, and does not intend to pursue any such claims.

### ARTICLE XVII
### RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such order in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding; to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or the confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

Notwithstanding the foregoing, it is Debtor's intention to request that the case be closed upon substantial consummation.

Respectfully submitted,

Dated: 9/29/23

_____
Christopher Czonstka, Sole Member and Manager
The Finish Man, LLC Debtor

Dated: 9/29/23

_____
Kevin K. Kercher, Esq.
881 Third St.
Ste. C-2
Whitehall, PA 18052
610-264-4120 – phone
610-264-2990 – fax
kevin@kercherlaw.com
Attorney for Debtor

-9-